## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION

LEVI PRUSS, on behalf of himself                    CASE NO.
and all others similarly situated,
                                                    (JURY TRIAL DEMANDED)
     Plaintiff,

v.

BUY BUY BABY, INC.,

     Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Levi Pruss, individually and on behalf of all others similarly situated, sues Defendant Buy Buy Baby, Inc. and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

## I.
## NATURE OF ACTION

1.    Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in negligently, knowingly, and willfully contacting Plaintiff on his cellular telephone without his prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## II.
## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.       Defendant, which is a subsidiary of Bed Bath & Beyond Inc., sells clothing, strollers and other consumer goods geared towards infants and young children.  It operates 90 stores across the United States, including in Florida.

4.       Defendant is subject to specific personal jurisdiction in Florida under section 48.193(1)(a), Florida Statutes, because the claims here arise out of and are related to its contacts with the Florida, including but not limited to (i) operating, conducting, engaging in, or carrying on a business or business venture in Florida; (ii) committing a tortious act within Florida; and (iii) causing injury to persons or property in Florida arising out of acts and omissions committed while it was engaged in solicitation and service activities within Florida.  In particular, by purposely directing thousands (and likely tens of thousands) of text message advertisements into Florida with the intent of delivering them to residents of Florida (and which were, in fact, delivered to residents of Florida), and thus purposefully availing itself of the privilege of conducting such activities in Florida, Defendant has sufficient minimum contacts with Florida that it should reasonably anticipate being sued in Florida for claims arising out of or relating to those contacts.

5.       In addition, Defendant is subject to general personal jurisdiction in Florida because it is engaged in substantial and not isolated activity within Florida.

6.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) because, among other things, (1) a substantial part of the events or omissions giving rise to the claim occurred in this District; and (ii) Defendant is deemed to reside in this District because it was subject to personal jurisdiction in Florida at the time the action was commenced.

**III.**
**<u>PARTIES</u>**

1.       Plaintiff is and at all times material was, a citizen and resident of Broward County, Florida and a "person" as defined by 47 U.S.C. § 153(10).

2.      Defendant is and at all times material was, a corporation incorporated under the laws of the State of Delaware, with its principal place of a business in New Jersey, and a "person" as defined by 47 U.S.C. § 153(10).

## IV.
## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## ((TCPA), 47 U.S.C. § 227)

7.      Congress enacted the TCPA in 1991 to address consumer complaints regarding certain telemarketing practices.  The TCPA regulates, among other things, the use of automated telephone equipment or "autodialers."  Specifically, the TCPA prohibits the use of autodialers to make any call, including sending text messages or SMS messages, to a wireless number in the absence of an emergency or the prior express written consent of the party called.  47 U.S.C. § 227(b)(1)(A)(iii)

8.      According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, such autodialed calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for such incoming calls whether they pay in advance or after the minutes are used.

9.      One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

10.      SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone rings

to alert him or her that a message has been received.  Because wireless telephones are carried on their owner's person, SMS messages are received virtually anywhere in the world.

11.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]  In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[2]

12.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

13.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent, requiring "prior express written consent" for calls or SMS messages that contain an "advertisement" or "telemarketing."  *See* 47 C.F.R. 64.1200(f)(8) (defining prior express written consent).

## V.
## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14.     Plaintiff is, and at all times mentioned herein was, the subscriber of a cellular telephone number ending in 0976 (the "0976 Number").  The 0976 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

15.     On or about February 19, 2015, Defendant, by itself or through an intermediary or intermediaries, caused to be transmitted the following text message to the 0976 Number:

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

[2] *Id.*

buybuyBABY: Ur mobile offer for 20% off 1 item in-store OR online is here! View http://d2c.bbbaby.mobi/ym?p=RMEX06A-AE8FQVO-JVMXBL Reply STOP to cancel

16.     The source of the above SMS message was identified as "422-29".

17.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on February 19, 2015, which was extracted from his cellular telephone:



18.     The source of the above message, which was "422-29", is an SMS short code leased by Defendant or Defendant's agent(s) or affiliate(s), and is used for operating Defendant's text message marketing program. *See* http://www.buybuybaby.com/store/static/TermsOfUse (last accessed August 25, 2015).

19.     The website located at http://d2c.bbbaby.mobi/ym?p=RMEX06A-AE8FQVO-JVMXBL is owned and/or operated by Defendant and/or its agent(s), and was designed to, and in

fact did, automatically redirect visitors to Defendant's websites that advertise and sell commercial goods.

20.     The official registration records of the domain name bbbaby.mobi indicate that it is owned and administrated by Defendant, its corporate parent Bed Bath & Beyond Inc., and an affiliated entity called Bed Bath & Beyond Procurement Co. Inc.

21.     Defendant transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), the SMS message received by Plaintiff at the 0976 Number and reproduced in ¶ 17 above.

22.     Because the SMS message received by Plaintiff at the 0976 Number and reproduced in ¶ 17 solicited Plaintiff to purchase Defendant's clothing, the above SMS message constituted a solicitation to purchase goods from Defendant.

23.     Defendant transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), twelve (12) additional SMS messages to, and received by Plaintiff at, the 0976 Number between March 4, 2015 and July 29, 2015, each of which was also from "422-29", also constituted a solicitation to purchase goods from Defendant, and also directed visitors to websites that are owned and/or operated by Defendant.

24.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on March 4, 2015, which was extracted from his cellular telephone:



25.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on March 12, 2015, which was extracted from his cellular telephone:



26.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on March 25, 2015, which was extracted from his cellular telephone:



27.    The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on April 13, 2015, which was extracted from his cellular telephone:



28.   The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on April 22, 2015, which was extracted from his cellular telephone:



29.    The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on May 7, 2015, which was extracted from his cellular telephone:



30.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on May 21, 2015, which was extracted from his cellular telephone:



31.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on May 27, 2015, which was extracted from his cellular telephone:



32.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on June 11, 2015, which was extracted from his cellular telephone:



33.    The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on June 24, 2015, which was extracted from his cellular telephone:



34.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on July 16, 2015, which was extracted from his cellular telephone:



35.     The following image is a screenshot of the offending SMS message sent to, and received by Plaintiff at, the 0976 Number on July 29, 2015, which was extracted from his cellular telephone:



36.    All telephone contact by Defendant and/or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 0976 Number occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

37.    Specifically, Defendant utilized an "automated telephone dialing system" because the SMS messages to the 0976 Number were sent from "422-29", which is a short code telephone number used by companies to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.  Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

38.    The complained of SMS messages to the 0976 Number constituted calls not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39. The complained of SMS messages to the 0976 Number constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

40. The complained of SMS messages to the 0976 Number constituted advertisements as defined by 47 C.F.R. 64.1200(f)(1).

41. Plaintiff never provided "prior express written consent" or any other form of consent allowing Defendant and/or affiliates, subsidiaries, or agents of Defendant to place telephone calls or send SMS messages to the 0976 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

42. Under the TCPA, the burden is on Defendant to demonstrate that Plaintiff provided express written consent within the meaning of the statute. *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

## VI.
## CLASS ACTION ALLEGATIONS

43. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States who received a non-emergency telephone call or SMS message from Buy Buy Baby, Inc., and/or affiliates, subsidiaries, or agents of Buy Buy Baby, Inc. to a cellular telephone through the use of an automatic dialing system or an artificial or prerecorded voice and who did not provide prior express written consent for such calls or SMS messages.

44. Defendant, its employees, and agents are excluded from the Class.

45. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

46. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant and/or their affiliates or subsidiaries.

47.     This Class Action Complaint seeks money damages and injunctive relief.

48.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the ascertainability, numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

49.     Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

50.     Ascertainability. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable. The members of the Class can be readily ascertained from Defendant's call records, database files and/or business records maintained by Defendant and/or its agents, affiliates, and subsidiaries. The Class members can be readily located and notified of this class action.

51.     Numerosity. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

52.     Typicality. Plaintiff received at least one call using an automatic telephone dialing system or an artificial or prerecorded voice, without providing his prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have

been impacted by, and face continuing harm arising out of, Defendant's violations and/or misconduct as alleged herein.

53.    <u>Adequacy</u>. As Class representative, the Plaintiff has no interests that are adverse to, or which conflict with, the interests of the absent members of the Class and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

54.    <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this class action. These counsel are experienced in handling complex class action claims.

55.    <u>Commonality and Predominance</u>. There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

a) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to place the calls complained of;

c) Whether the complained of conduct was knowing and/or willful;

d) Whether Defendant is liable for damages, and the amount of such damages;

e) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

56.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize calls to their cellular telephones.

57.     Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect

their interests. The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for Defendant.

58.     Defendant and/or affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATIONS OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

59.     Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

60.     The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

61.     As a result of the alleged negligent violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to an award of $500.00 in statutory damages for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

62.     Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

63.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## (47 U.S.C. § 227)

64.     Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

65.     The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

66.     As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

67.     Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

68.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in his favor, as follows:

1. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member $500.00 in statutory damages for each and every call/message that violated the TCPA;

2. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every call/message that violated the TCPA;

3. Injunctive relief prohibiting such violations of the TCPA in the future;

4. An award of attorneys' fees and costs to counsel to Plaintiff and the Class;

5. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class; and

6. Such other relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.


Dated:  August 25, 2015                          Respectfully submitted,

By: <u>/s/  David P. Milian</u>

**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**

David P. Milian, Esq.
Florida Bar No. 844421
dmilian@careyrodriguez.com
Frank S. Hedin, Esq.
Florida Bar No. 109698
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475